## UNITED STATES v. EDSON.
### No. 5459.

Circuit Court of Appeals, Seventh Circuit.

Nov. 12, 1935.

Will G. Beardslee, Director, Bureau of War Risk Legislation, of Washington, D. C., Wilbur C. Pickett, Sp. Asst. to the Atty. Gen., Young M. Smith, Atty., Department of Justice, of Washington, D. C., Arthur Roe, U. S. Atty., of Danville, Ill.; and Walter E. Ackermann, Asst. U. S. Atty., of Belleville, Ill., for the United States.

Frank C. Wade, of Terre Haute, Ind., and Samuel V. Jinkins, of Danville, Ill., for appellee.

Before EVANS and SPARKS, Circuit Judges, and BALTZELL, District Judge.

BALTZELL, District Judge.

This action was begun by the filing of a declaration in the district court by the appellee on the 17th day of June, 1932, wherein he seeks to recover under the provisions of a War Risk Insurance Contract. Issues were joined, and the cause tried to a jury. A verdict was returned in favor of appellee, finding that he was totally and permanently disabled on or before the 27th day of January, 1920. The verdict was returned on the 11th day of September, 1934, and on the 14th day of September, 1934, judgment was rendered thereon.

There is only one question presented for determination, and that is, whether or not there is any substantial evidence to support the verdict and judgment. The only error relied upon by appellant is that the District Court erred in overruling its motion for a directed verdict at the conclusion of all the evidence.

The appellee was a World War veteran, having entered the military service on the 11th day of February, 1918. Shortly thereafter there was issued to him a War Risk Insurance Contract in the sum of $10,000. Premiums were paid by deducting the same from his pay each month until the date of his discharge, which was on the 24th day of February, 1919. Because of the fact, however, that he was afterwards awarded compensation, commencing with the date of his discharge, it was agreed that his insurance was in full force and effect until the 27th day of January, 1920. This is the date upon which the jury found him to be totally and permanently disabled.

Appellee is a man about forty-four years of age and was living upon a farm near Mount Vernon, Ill., at the time of the trial of this cause. At the time of his induction into service, he was employed upon a farm, where he lived with his wife and children. Within a very short time after his induction into service, he was sent overseas and soon saw action at the front. He was severely gassed on the 18th day of July, 1918, and was taken to a hospital in France, where he remained for several weeks, returning to his outfit early in September. He remained with his outfit for only a short time, being compelled to return to the hospital, because of his physical condition. Subsequently he was able to do only light work. Returning to the United States as a causal, he was discharged from Camp Grant, Ill.

Immediately upon being discharged from the army, appellee returned to his home in Southern Illinois, and, according

to his testimony, he did not attempt to do any work for a few weeks, owing to the fact that he was sick and in a weakened condition. This testimony is corroborated by his immediate family. His father further testified that before his entering the service he was a strong, able-bodied man and a good worker.

There can be no doubt that appellee has made a good faith effort to work and to support his family, beginning shortly after his return from the service. Having worked upon a farm prior to his military service, it was natural that he should attempt that sort of work upon his return. Within a short time after his return, he procured a job upon a farm, but found that, owing to his weakened physical condition, it was impossible for him to perform that kind of work. Therefore, he procured a position with the Illinois Glass Company, at Alton, Ill., where he was assigned light work—that of packing bottles—which position he occupied for approximately three months early in 1919, but he was forced to quit because of ill health. He then commenced working for Herbert Scheffel, the owner of a farm, and for whom he had worked prior to his entering the military service. He began this work in the summer of 1919 and continued working for Scheffel for a period of approximately eighteen months. Shortly after beginning his work on the Scheffel farm he suffered a hemorrhage while engaged in plowing, and was found in the field unconscious by his employer about 8 o'clock that evening. After that time he was unable to do or perform the heavy work required to be done upon a farm, but was assigned to do light work. For such services he was paid $35 per month, but the work which he did was very light, and he was continued in such employment because, in the language of his employer, "I felt sorry for his family, but finally couldn't stand it any longer, and had to let him go." After this experience he was unable to perform any further work upon the farm, because of his physical condition. No work of any consequence was done by him after the fall of 1920 until the month of March, 1923, when the government undertook to rehabilitate him by giving him a course in vocational training. He spent about nineteen months in such training, five months at Wauwatosa, Wis., seven months at the Missouri State University, and seven months at Carlton College, Mo.

He was then, under orders of the government, taken out of vocational training and sent to St. Louis, Mo., for further physical examinations. He was informed by the physician in charge that he had active tuberculosis and that he would be required to go to a hospital. He was never again physically able to resume his vocational training. Since that time he has been in numerous government hospitals, and examined by numerous doctors, including many government doctors, but has never been able to perform work of any consequence since his discharge from vocational training. He now resides upon a small farm, where he does light work in the garden, etc.

The court is not required in this case to depend entirely upon the testimony of the appellee and lay witnesses as to the work done by him since the date of his discharge, in determining whether or not he was totally and permanently disabled at the time the insurance contract was in force, that is, upon January 27, 1920. There is an abundance of medical evidence in the record which discloses rather clearly the physical condition of appellee during all the time in question. As early as July, 1920, Dr. Thomas H. Hall made a physical examination of appellee and found he was suffering from "tubercular trouble." This same physician testified that he continued treating him professionally during the remainder of that year, and that the tubercular trouble continued during all that time, showing no improvement. During the time he was treated by Dr. Hall he was unable to perform or do manual labor of any kind. He was also examined during the summer of 1920 by a government doctor who specialized in tuberculosis, and was diagnosed as having "active tuberculosis" at that time. It is not necessary to review in detail the various physical examinations had by appellee during the succeeding years. It is sufficient to say that he has been examined by at least twelve or fifteen doctors, many of whom are government doctors, and in each instance a diagnosis of "pulmonary tuberculosis" is found. In some instances it was said to be "arrested," while other examinations disclosed it to be "active." Appellee has spent two or three years in government hospitals and yet shows no sign of permanent improvement.

■ It is a well-known fact in medical science that rest is the proper treatment

for pulmonary tuberculosis. Appellee has tried this treatment, as well as other treatments prescribed, and has, during all these years, made a good faith effort to regain his health so that he may follow some occupation and thus be able to support himself and family. However, for more than fifteen years, he has been unsuccessful in such effort. His physical condition has not improved, but, on the ·contrary, has gradually become worse as the years have gone by. As was said ·by this court, in the case of United States v. Schroeder, 77 F.(2d) 173, 175: "We may properly consider the evidence as to the progress which appellee has made toward recovering from his disorders in so far as it tends to show whether he was totally and permanently disabled before the policy lapsed. Lumbra v. United States, 290 U. S. 551, 560, 54 S. Ct. 272, 78 L. Ed. 492."

■ There can be no doubt but that there is substantial evidence in this case to support the verdict of the jury. The motion of appellant for a directed verdict was properly overruled by the District Court.

The judgment is affirmed.